TYSON, Judge.
Charles Ray Clency was indicted for and convicted of first-degree robbery of Elizabeth Poole, while armed with a pistol, for which he was sentenced, pursuant to Alabama’s Habitual Felony Offender Act, to life imprisonment without parole.
It is undisputed that on October 18,1980, this appellant, Charles Clency, drove Benjamin Franklin Davis to Harbin’s Drug Store in Hoover, Alabama, where they entered the store together. The appellant immediately solicited the assistance of Ms. Fraser, the cashier on duty, in selecting a face cream “for oily skin.” Mr. Davis proceeded to the rear of the store, and at gunpoint forced the pharmacist, Ms. Poole, to fill a pillowcase with “drugs.” Ms. Poole activated a silent alarm by moving a bottle of “drugs.” Within minutes the police arrived. The appellant and Mr. Davis were both handcuffed and arrested while still inside the store and were subsequently transported to jail.
The police recovered the pillowcase and the pistol used by Mr. Davis and made a list of the “drugs” that he had forced Ms. Poole to deposit into the pillowcase. Shortly after the police had departed, a second pistol was found on the counter where the appellant had been looking at face creams. This gun, which had the initials “C.C.” (appellant’s initials) carved above its serial number, was immediately turned over to the police.
The only evidence presented in defense was appellant’s own testimony that he drove Mr. Davis to Harbin’s Drug Store “to get a prescription filled.” Appellant stated that he had no idea Mr. Davis intended to “rob” the store.
Ms. Fraser testified, however, that when she saw Mr. Davis apparently robbing Ms. Poole in the rear of the store, and had returned to the front, the appellant was pointing a pistol at her, a pistol she later identified as the one found on the counter where the appellant was standing.
Ms. Poole could not describe appellant’s actions on the day of the robbery but she did state that she had seen appellant in the store with Mr. Davis the day before the robbery.
Furthermore, even though he denied it at trial, the appellant admitted in a signed statement to the police that he and Davis intended to rob the store, that he “had reservations” about completing the robbery after he was inside and that he did place a pistol on a counter before the police arrived. (R. 269).
I
The sole issue on appeal is the voluntariness of this statement of appellant. Appellant claims that the evidence supports his contention that the statement was coerced and that, therefore, the trial court erred in denying his motion to exclude it at trial.
Appellant testified that he was intimidated into making the incriminating statement. He stated that when the police arrived at the drug store Ms. Fraser told them that he was not with Davis and that he had done nothing wrong. Nevertheless, he was ordered at gunpoint to lie on the floor where a shotgun was held to his head. According to the appellant, the female officer holding the shotgun had orders to “blow his brains out” if he moved. Then, even though he proclaimed his innocence, several officers began taunting him while he was on the floor, stating that they usually shot first and asked questions later.
Appellant further testified that when he arrived at the police station he was denied his request to use the telephone and was pushed into a cell. He overheard some officers discussing the possibility of “hanging” him.
After three hours without food he was taken for interrogation by Officers Clark and Lowman. Appellant admitted that he knew his Miranda rights but said that he did request an attorney. He admitted signing the waiver of rights form, but denied reading or knowing about the paragraph stating that he wished to make a “voluntary” statement. He admitted signing the statement that Officer Clark had written but denied having read said statement and *1246 denied telling Clark that he (the appellant) ever intended to “rob” the drugstore.
Appellant claimed that he signed the “waiver” form and the statements only because he thought that was the only way he would be allowed to use the telephone.
Contrary to appellant’s assertions, however, Ms. Fraser and Officer Tate each testified that Ms. Fraser said nothing to Officer Tate when he asked her about the alarm. Instead, she merely “cut” her eyes in appellant’s direction and toward the rear of the store. Ms. Fraser also testified that the appellant pointed a pistol at her just before the police arrived.
Tate and an Officer Franklin, the arresting officers, testified that no one threatened, intimidated or coerced the appellant either at the scene of the robbery or when he was transported to jail.
Sergeant Clark testified that he and Officer Lowman made no threats or promises or offered inducement during their fifteen to twenty minute interrogation of the appellant. Sergeant Clark read the appellant his Miranda rights and appellant made it clear that he understood those rights. Clark then had appellant read the “waiver” out loud that:
“I have read the above and understand fully each of these rights. Having these rights in mind, I wish to make a voluntary statement and answer any questions without contacting an attorney or having one present.
“No force, threats or promises have been used by anyone to make me sign this. I sign this statement after having been orally advised of my constitutional rights set out above, and understanding them in full.” (R. 262-263).
Appellant then signed this “waiver” form.
After a brief discussion with appellant about the robbery, Officer Clark summarized appellant’s comments as follows:
“Admits placing gun, H & R model 732, .32 caliber on counter before police arrive. Stated he had reservations about continuing robbery after he came in, although he and Davis did go into Harbin’s Pharmacy for the expressed reason of robbery.” (R. 269).
The appellant read and signed this statement (Exhibit 6) which was introduced for the jury’s consideration.
Sergeant Clark further stated that, to his knowledge, appellant never asked for an attorney, and never requested to use the telephone. Moreover, appellant never indicated that he, in any respect, misunderstood either the Miranda rights, the waiver or the statement with reference to the robbery.
After a careful review of this record, it is our opinion that the trial court did not err in admitting appellant’s statement.
There was “sufficient evidence” to support the trial court’s conclusion that said statement was intelligently, understandingly and voluntarily given. Burks v. State, 353 So.2d 539 (Ala.Cr.App.1977); Taylor v. State, 361 So.2d 1189 (Ala.Cr.App.1978); Ard v. State, 362 So.2d 1320 (Ala.Cr.App.1978); Simpson v. State, 401 So.2d 263 (Ala.Cr.App.), cert. denied, 401 So.2d 265 (Ala.1981).
This record is free of error. Therefore, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.